POLEN, C.J.,
concurring specially.
Though I ultimately concur with the ultimate holding in the majority opinion, I write specially to express my extreme displeasure with DCF’s actions in the instant case.
*364 Though I concur that P.A. is factually distinguishable from the instant case, I cannot help but notice that cases like P.A, and this case, are becoming more and more common before this court. On a startlingly regular basis, this court is asked to review dependency and termination proceedings where complaints are leveled that DCF has not fulfilled its statutory obligations. On a professional note, these cases are resulting in overload of our appellate dockets. On a personal note, these cases reflect just how deficient the provision of services to families in need by DCF has become.
Deficient performance by DCF, as evidenced in this court, has reached epidemic proportions. Though there is no formal mechanism for doing such, I am of the belief this court can practically take judicial notice that claims alleging deficient performance on behalf of DCF are well-founded. I am mindful that this court’s powers of compulsion and compliance with regard to DCF are limited to those actions within DCF’s power to comply. See Dep’t of Children and Families v. Anderson, 27 Fla. L. Weekly D2813 (Fla. 4th DCA Oct. 23, 2002), reh’g pending (holding court could not compel DCF to comply with its statutorily mandated duty to provide treatment to incompetent juvenile defendants where DCF lacked the resources to provide the treatment). Yet, there is absolutely no evidence in the record that DCF’s failure to fulfill its obligations under chapter 39 in the instant case was due to a lack of resources. See also Anderson, 27 Fla. L. Weekly D2313-14 (Stone, J., dissentingXnoting DCF offered no eviden-tiary proof, but only claims made by counsel, regarding its alleged lack of resources, and that an evidentiary hearing should be held before a determination was made that DCF had taken “all reasonable steps” in attempt to fulfill its statutory obligation). Rather, DCF’s failure to fulfill its obligations in the instant case seems the result of a systemic attitude on DCF’s behalf which can be classified as ambivalence at best. In fact, I would go so far as to characterize DCF as “lucky” in the instant case, lucky that CRC, by way of Ms. Lawrence, did DCF’s job (providing services to the mother), ultimately providing DCF with grounds to move for termination and move another file out of its office. If DCF had any genuine concern for the mother, or cared a whit whether or not she complied with her case plan (in furtherance of preserving the family unit), it is anything but apparent from the face of the record. DCF cannot continue to treat parents and children under its supervision as nothing more than pieces of paper, numbers and files that must be dealt with swiftly, with no regard for the results. Although the mother in the instant case was not prejudiced by DCF’s abject performance, the people of the State of Florida are prejudiced by such pervasive and defective performance by a governmental organ entrusted with such critical responsibilities. I join the majority in urging DCF to comply with its statutorily mandated duties under chapter 39. Florida’s families deserve nothing less.